STACY et al., Appellees and Cross–Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant and Cross–Appellee.

[Cite as *Stacy v. Nationwide Mut. Ins. Co.* (1998), 125 Ohio App.3d 658.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–96–053.

Decided Feb. 27, 1998.

*James T. Murray,* for appellees and cross-appellants.

*Randolph E. Digges III,* for appellant and cross-appellee.

GLASSER, Judge.

This is an appeal from a judgment of the Erie County Court of Common Pleas, which, in a wrongful death action, found that the limits of appellee/cross-appellant Marilyn Stacy's uninsured motorist coverage was $300,000, ordered appellant/cross-appellee, Nationwide Mutual Insurance Company ("Nationwide"), to pay $287,500 to the estate of Walter Stacy, Marilyn Stacy's deceased husband, ordered Nationwide to pay attorney fees of $115,000, and denied appellees'/cross-appellants' motion for prejudgment interest.

On appeal appellant/cross-appellee, Nationwide, sets forth the following five assignments of error:

"I. The trial court erred in finding that the release and trust agreement which was signed by the personal representative of the estate of the insured decedent in favor Nationwide upon receipt of $12,500 under the uninsured motorist coverage of the policy was of no force or effect.

"II. The trial court erred in finding that the uninsured motorist coverage limits under the policy were equal to the bodily injury liability coverage limits by operation of law where the sole named insured specifically requested lower uninsured motorist coverage limits in writing at the time the policy was issued.

"III. The trial court erred in granting a money judgment against Nationwide in this declaratory judgment action, particularly when there has never been a binding determination made between the claimants and Nationwide as to the amount of damages to be recovered by them under the policy.

"IV. The trial court abused its discretion in awarding plaintiffs their attorney fees in this declaratory judgment case.

"V. The trial court erred in basing its award of attorney fees upon a forty percent contingent fee contract rather than upon the hourly fee guidelines adopted by the Ohio Supreme Court in *Villella v. Waikem Motors, Inc.* (1988) [1989], 45 Ohio St.3d 36 [543 N.E.2d 464]."

In addition, appellees/cross-appellants, Marilyn Stacy et al., set forth the following cross-assignment of error:

"The court erred in denying prejudgment interest to Marilyn Stacy."

The facts that are relevant to the issues raised on appeal are as follows.

In 1977, appellee's husband, Walter Stacy, acquired a Nationwide automobile insurance policy, No. 92B266895, from Nationwide agent Roger Dickman. The declaration page of the policy, which designated Walter Stacy as "POLICYHOLDER: (Named Insured)," stated that the policy provided bodily injury liability coverage limits of $100,000 per person and $300,000 per accident and

uninsured motorist coverage limits of $12,500 per person and $25,000 per accident. The limit of uninsured motorist coverage under the policy was set pursuant to a written election made on June 7, 1977, by Walter Stacy.

In 1978, appellee contacted Dickman and requested coverage for a 1972 Oldsmobile Cutlass she had just inherited from her father. Appellee's vehicle was added to the policy as an additional covered vehicle. Over the next several years, appellee and her husband added and subtracted several vehicles from the policy; however, the policy number remained the same and Walter Stacy was at all times the only insured named on the policy's declaration page.

On December 7, 1983, Walter Stacy was involved in an automobile accident with another driver, Alan Cavallin, in which Walter Stacy was killed. He was survived by appellee and their nine adult children. Cavallin was an uninsured driver at the time of the accident.

On December 14, 1983, appellee, acting as executor of Walter Stacy's estate, employed the law firm of Murray & Murray Co., L.P.A. ("Murray firm"), pursuant to a contingent fee contract in which she agreed to pay the Murray firm one-third of any monetary recovery "from any source, including any uninsured motorists proceeds." On December 29, 1983, appellee filed a wrongful death action against Cavallin, which was later amended to include Ohio Night Clubs and Entertainment Corporation, also known as "Mugshots" bar, as an additional defendant. On May 24, 1984, Nationwide issued a check in the amount of $12,500 to "Marilyn Stacy, Executrix of the Estate of Walter Stacy, deceased and Murray & Murray, attorneys at law." On the same day, appellee signed a "Release and Trust Agreement—UMC" ("release"), in her capacity as executor of Walter Stacy's estate, which stated that, in exchange for the sum of $12,500, she "does forever release and discharge Nationwide of and from all claims of whatsoever kind and nature prior to and including the date hereof growing out of the Uninsured Motorist Coverage of an Automobile Insurance Policy number *92B266–895* issued by Nationwide to *Walter Stacy,* and resulting or to result from an accident which occurred on *December 7, 1983* at or near *Sandusky, Ohio.*"

The release further provided, "In consideration of such payment, the under-signed * * * agrees to reimburse, indemnify, and save harmless said Nationwide against any further claims under said policy resulting from the above accident, by or on behalf of any minor or deceased named above, her [his] representatives, heirs or assignees * * *."

On September 13, 1984, appellee filed a "First partial FIDUCIARY'S AC-COUNT" in the Erie County Probate Court. Included in the attached list of "RECEIPTS AND DISBURSEMENTS" was a $12,500 payment by Nationwide for "uninsured motorist coverage on personal injuries." The list also included a "Pending claim for wrongful death," valued at $1. On October 24, 1984, Probate

Court Judge Ronald G. Kaufman signed an "ENTRY APPROVING AND SETTLING FIRST PARTIAL ACCOUNT."

On June 13, 1985, a jury verdict was rendered in appellee's lawsuit against Cavallin and Mugshots. In interrogatories, the jury found that "Mugshots" was not negligent; however, the jury also found that Walter Stacy's estate was entitled to $750,000 in compensation for his death.

On August 9, 1985, appellee's attorney sent a letter to Nationwide, in which he stated that Mrs. Stacy was making a demand upon Nationwide Insurance Company to pay her $100,000. On January 6, 1996, Nationwide's attorney, Richard Cathey, sent appellee's attorney a letter in which he stated that "Nationwide had fulfilled its obligation under Mr. Stacy's insurance policy when it paid Mr. Stacy's estate the $12,500 limits [of the policy]."

Sometime in February 1986, appellee and her nine adult children executed a new contingent fee agreement with the Murray firm in which they stated that, in the event that any recovery is made from Nationwide, the Murray firm "shall be entitled to forty percent (40%) of any such uninsured or underinsured benefits in excess of the $12,500 already received." Shortly thereafter, on March 3, 1986, appellee and her children filed the complaint herein.[1] On May 5, 1986, Nationwide filed an answer. On April 1, 1987, Nationwide filed a motion for summary judgment, and on July 31, 1987, appellee filed a motion for partial summary judgment.

On October 18, 1989, appellee, with leave of court, filed an amended complaint that contained five counts, in which she asserted that (1) as a named insured under the policy, she is entitled to $300,000 due to Walter Stacy's death, (2) each time a vehicle was added or subtracted from the policy, Nationwide had a duty to offer Walter Stacy and appellee the opportunity to reject uninsured motorist coverage, (3) the release signed by appellee is void for lack of consideration and Nationwide's attempt to use it to bar appellee's claim amounts to bad faith, (4) Nationwide had an obligation to offer appellee a separate insurance policy when she acquired the 1972 Oldsmobile, and (5) there are two separate limits of coverage under the policy because the Stacys had two covered vehicles at the time of Walter Stacy's death. On December 4, 1989, Nationwide filed an answer to the amended complaint. On January 19, 1993, the trial court filed two judgment entries; one summarily denying Nationwide's motion for summary

---

1. Marilyn and Walter Stacy's nine children are Jerry Stacy, Pamela Lawrence, Rose Baker, Robert Stacy, Brenda Stacy, Beverly Garrett, Peggy Stacy, Daniel Stacy, and David Stacy. For purposes of this opinion, however, all of the plaintiffs in the declaratory judgment action against Nationwide will be referred to under the collective designation of "appellee."

judgment and appellee's motion for partial summary judgment, and one setting the matter for a nonjury trial.

On March 29, 1993, a trial to the court was held at which testimony was presented by appellee. In addition, pursuant to stipulation of the parties, the trial court admitted into evidence copies of Nationwide insurance policy No. 92B266895 and the release executed by appellee, various other estate documents and contracts, the trial court's judgment entry in appellee's wrongful death action against Cavallin, affidavits by appellee, English professor Samuel B Shearer, Jr. and attorney George Howells, and the deposition testimony of appellee, Howells, and Dickman.

In his affidavit, Shearer stated that, based on a "reasonable interpretation" of the policy language, appellee is a named insured under the terms of the policy. Howells stated in his affidavit and his deposition that it is "standard practice" that wrongful death claims are not enforceable until approved by the probate court pursuant to R.C. 2125.02 and/or "a complete and full and final release" is obtained from all family members of the deceased. Howells further stated in his deposition that, in his opinion, Dickman should have told appellee that her husband's policy had "subnormal" coverage before adding her vehicle to the policy.

Dickman stated in his deposition that it is standard practice for Nationwide agents to "add on" an additional vehicle within the same household to an existing policy. He further stated that he does not write separate policies for additional family members unless specifically requested to do so, and the addition or subtraction of a vehicle without a change in coverage does not create a new insurance policy. Dickman defined the term "named insured" as "whoever was named in the declarations of the policy," and stated that Nationwide agents use a family insurance policy for the "convenience of both the company and insured," and in order to become a named insured, appellee would have had to fill out an application for insurance and put down "appropriate money." He also stated that appellee gave him no reason to believe she desired a separate policy, and if she had requested one, he would have explained uninsured motorist coverage to her.

Appellee stated in her deposition that her husband, Walter, arranged for all of the family's home, life, boat, and automobile insurance, and that she trusted his judgment in such matters. She said that Walter Stacy told her to make sure she had insurance on her car so that they would not lose their home if she had an accident. She also stated that she did not speak to Dickman about obtaining coverage, but she showed a woman in his office the "bill of sale" for her car and asked for insurance. Finally, appellee stated that, had she been asked about coverage, she probably would have opted for the same coverage as her husband, and she would have chosen to have her car added to his insurance policy.

At trial, appellee testified that she did not know if she would have chosen to insure the vehicle under her husband's policy or whether she would have chosen the same coverage limits. She also testified that, in hindsight, she would not have insured her vehicles with Nationwide had she known what type of uninsured motorist coverage her husband had, and she would have wanted full coverage if Dickman had explained it to her.

At the close of all the evidence, the trial court ordered the parties to present written closing arguments, which were submitted by both parties on April 29, 1993. On May 31, 1994, appellee filed a "Motion for hearing on Liability for Interest and Attorney Fees."

On August 31, 1994, the trial court filed a judgment entry in which it found that the release signed by appellee was "of no force and effect" because no consideration was given to appellee in exchange for the release, and the release was not properly approved by the probate court. The trial court also found that the release was not binding "as to claimants other than the personal representative" because they did not sign the release. In addition, the trial court found that Marilyn Stacy is a "named insured" under Walter Stacy's insurance policy and that as such she should have been given the opportunity to reject uninsured motorist coverage equivalent to the limits of bodily injury liability ("equivalent coverage"). Finally, the trial court found that Walter Stacy's rejection of equivalent coverage was ineffective at the time of his death, because he changed vehicles covered by the policy between 1977 and 1983 without signing a new rejection form. Accordingly, the trial court declared that appellee is entitled to the limit of the uninsured motorist insurance policy, $300,000, and ordered Nationwide to pay Walter Stacy's estate $287,500.[2]

On September 15, 1994, a hearing was held on the remaining issues of prejudgment interest and attorney fees, at which appellee presented the testimony of economist Norman Eckel. Eckel set forth various calculations based on assumptions as to the amount of a potential judgment in favor of appellee, using various interest rates and dates from which such amounts would have become due and payable. At the close of Eckel's testimony, the parties' attorneys presented oral arguments as to the propriety of attorney fees in this case. On July 11, 1996, the trial court filed a second judgment entry, in which it denied appellee's motion for prejudgment interest and ordered Nationwide to pay attorney fees in the amount of $115,000. On July 26, 1996, a timely notice of appeal from both judgments was filed.

---

2. The trial court arrived at $287,500 by subtracting the $12,500 previously paid by Nationwide from the $300,000 judgment.

Nationwide argues in its first assignment of error that the trial court erred in finding the release was invalid, because "the $12,500 payment by Nationwide to Marilyn Stacy and the forbearance to assert its contractual rights [to arbitration] [were] adequate consideration for the release." Nationwide also argues that R.C. 2125.02(C) is not controlling in this case, because it requires probate approval for a settlement with the tortfeasor, not with the insured's uninsured motorist carrier.

As to the adequacy of consideration for release, "[i]t is axiomatic that courts, as a general rule, will not inquire into the adequacy of consideration once consideration is said to exist." *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 6, 565 N.E.2d 540, 542; *Wyckoff v. Lightning Rod Mut. Ins. Co.* (Dec. 8, 1995), Lucas App. No. L–95–128, unreported, 1995 WL 810651. Accordingly, this court will not inquire into the adequacy of such consideration.

As to whether the probate court approved the release, pursuant to R.C. 2125.02(A)(1), "an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent * * *." See, also, *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 24, 610 N.E.2d 437, 439. In such cases, the proceeds of uninsured motorist insurance are to be distributed among those persons who are entitled by statute to bring a wrongful death action. *In re Estate of Reeck* (1986), 21 Ohio St.3d 126, 21 OBR 429, 488 N.E.2d 195, at the syllabus.

R.C. 2125.02(C) states:

"A personal representative appointed in this state, with the consent of the court making the appointment and at any time before or after the commencement of an action for wrongful death, may settle with the defendant the amount to be paid."

"The statute clearly mandates that a personal representative appointed by a probate court must obtain that court's consent regarding a settlement agreement." *Fosnight v. Esquivel* (1995), 106 Ohio App.3d 372, 375, 666 N.E.2d 273, 274, citing *Matz v. Erie–Lackawanna RR. Co.* (1965), 2 Ohio App.2d 136, 141, 31 O.O.2d 241, 244, 207 N.E.2d 250, 253–254. See, also, *Tennant, supra,* 81 Ohio App.3d at 24, 610 N.E.2d at 439. The Supreme Court of Ohio has stated that such approval is necessary because the probate court is charged with determining whether a settlement is "fair and equitable." In so determining, the court may consider how much insurance coverage is "available to satisfy the wrongful death claim." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 94, 545 N.E.2d 83, 93.

In this case, appellee Marilyn Stacy was appointed by the probate court as the personal representative of Walter Stacy's estate. The record reflects that

appellee listed the $12,500 as a receipt from Nationwide for "personal injuries" in the first partial accounting. The wrongful death claim against Cavallin was listed as a separate item on the partial accounting, with a stated value of $1. Although the record shows that the probate court generally approved the partial account- ing, it does not contain evidence that the probate court approved the release as a settlement of the wrongful death claim as required by R.C. 2125.02(C).

Upon consideration, we find that, since there is no probate court approval in the record, any settlement evidenced by the release fails to comply with the statutory requirements. Accordingly, the trial court correctly determined that the release "is of no force and effect" as to appellees, and Nationwide's first assignment of error is not well taken.

Nationwide asserts in its second assignment of error that the trial court erred when it found that "the uninsured motorist coverage limits under the policy were equal to the bodily injury liability coverage limits by operation of law." Nationwide argues in support thereof that Marilyn Stacy is not a "named insured" under the policy and that Walter Stacy's written rejection of equivalent uninsured motorist coverage was not void at the time of his death simply because he added new vehicles to the insurance policy.

R.C. 3937.18, as in effect at the time Walter Stacy applied for insurance in 1977, stated:

"Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer."

The current version of R.C. 3937.18 states:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insured:

"(1) Uninsured motorist coverage * * *

"(2) Underinsured motorist coverage * * *

"(C) A named insured or applicant may reject or accept both coverages as offered under division (A) of this section * * *. A named insured's or applicant's rejection of both coverages as offered under division (A) of this section * * * shall be in writing and shall be signed by the named insured or applicant * * *.

"If a named insured or applicant has selected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer, with limits in accordance with the schedule of limits approved by the superintendent, such coverages need not be provided with limits in excess of the limits of liability previously issued for such coverages, unless a named insured or applicant requests in writing higher limits of liability for such coverages."

Ohio courts have interpreted R.C. 3937.18 to mean that "in order to provide less uninsured motorist coverage than liability coverage, there must be an express rejection of such equivalent coverage by the insured. Equivalent amounts of liability and uninsured motorist coverage are provided by operation of law if the insured does not expressly reject them." *Anderson v. Hartford Underwriters Ins. Co.* (1994), 96 Ohio App.3d 341, 345, 645 N.E.2d 75, 77. However, neither the statute nor case law requires the signing of a new rejection statement each time an insured replaces a vehicle covered by the original policy.

It is undisputed that on June 7, 1977, Walter Stacy executed a document that was sufficient to establish his initial rejection of equivalent coverage. That statement read:

"The state of Ohio requires that we provide Uninsured Motorist Coverage in the amount not less than the Liability limits of your policy. You have the option of rejecting this coverage entirely or requesting an amount of coverage less than the limits for Bodily Injury Liability.

"This coverage is designed to pay for damages for injuries that would be received in accidents caused by drivers of uninsured vehicles.

"( ) I have read the foregoing and do not want Uninsured Motorist Coverage.

"(X) I have read the foregoing and desire Uninsured Motorist Coverage Limits of 12,5/25 which I understand and realize are lower than my limits for Bodily Injury liability insurance."

█ It is well settled that, pursuant to R.C. 3937.18, uninsured motorist coverage was designed by the General Assembly to protect persons, not vehicles. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. In this case, the policy number and the amount of coverage protecting Walter Stacy remained the same from the time he signed the above rejection statement in 1977 until the time of his death in 1983. The only changes were the substitution of vehicles and resulting changes in premiums, which were calculated to keep the amounts of coverage chosen by Walter Stacy at the same level.

Upon consideration, this court finds, as a matter of law, that Nationwide was not required by law to ask Walter Stacy to sign a new statement rejecting

equivalent uninsured/underinsured motorist coverage each time he changed vehicles between 1977 and 1983. Accordingly, the trial court erred by finding that "coverage arose in favor of Walter Stacy * * * equal to the liability coverage of his insurance policy" as a result of Nationwide's failure to reoffer such coverage each time Walter Stacy changed vehicles.

■ Nationwide asserts on appeal that the trial court erroneously found that Marilyn Stacy was a "named insured" under the policy because she is not named on the declaration page of the policy, and Walter Stacy acted as her agent for purposes of purchasing automobile insurance. Nationwide argues that because Marilyn Stacy was not listed as a "named insured," she is bound by Walter Stacy's rejection of equivalent uninsured motorist benefits. Appellee responds that the trial court correctly determined that Marilyn Stacy is a "named insured" under the policy, even though she is not so designated. In support thereof, appellee argues that (1) the "unequivocal terms" of the policy make her a "policyholder," (2) she is listed on the application for insurance, (3) she was the sole owner of an automobile that was insured under the policy, and (4) she did not give Walter Stacy the power to act as her agent for purposes of purchasing automobile insurance coverage.

■ The question of whether Marilyn Stacy was a "named insured" under the policy is a question of law. See *Auto–Owners Mut. Ins. Co. v. Andrews* (Dec. 20, 1991), Huron App. No. H–91–15, unreported, 1991 WL 270402.

It is undisputed that the term "named insured" is not defined by statute or the terms of the insurance contract. In *Andrews, supra,* we noted:

" '[T]wo descriptive expressions are used in automobile policies to designate persons covered by insurance, "named insured" and "insured," and * * * whenever the description "named insured" is used, only the person named in the declaration of the policy is meant.' " *Id.,* quoting Annotation, Who is "Named Insured" Within Meaning of Automobile Insurance Coverage (1979), 91 A.L.R.3d 1280, 1291, 1979 WL 52381.

It is undisputed that only Walter Stacy was listed on the declaration page of the insurance policy as "Policyholder: (Named Insured)." Further, appellee stated in her deposition that Walter Stacy was responsible for purchasing automobile insurance for the entire family, and she asked Dickman to add her vehicle to the policy that her husband had purchased. It was not until later that appellee testified at trial that, in hindsight, she might have asked for greater coverage if Dickman had explained to her the implications of her husband's rejection of equivalent coverage.

Upon consideration of the foregoing, this court finds that appellee was not a "named insured," in that she was not listed on the declaration page of the policy, and she was not the party who contracted with Nationwide for insurance coverage. The only remaining question, therefore, is whether the language of the insurance contract can reasonably be interpreted to mean that appellee is a "named insured" by virtue of her status as Walter Stacy's wife.

The interpretation of an insurance contract involves a question of law. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159, 1163. The Supreme Court of Ohio has stated:

"The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect. * * *

"The words in a policy must be given their plain and ordinary meanings, and only where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage. * * * Nevertheless, it is axiomatic that the general rule of liberal construction cannot be employed to create an ambiguity where there is none." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88.

The insurance policy defines the terms "you" and "your" to "mean or refer to the policyholder first named in the attached Declarations, and include that policy holder's spouse if living in the same household." It is thus clear from an examination of the provisions of the policy that the terms "you" and "your" unambiguously refer to two separate and distinct entities: the "policyholder first named" on the declaration page, and "that policyholder's spouse." See *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 661 N.E.2d 1005. The "policyholder first named" on the declarations page is designated as the "named insured." As previously stated, the only person listed on the declaration page as the "named insured" is Walter Stacy.

This court has reviewed the entire record of proceedings that was before the trial court and, upon consideration thereof and the law, finds that Walter Stacy's rejection of equivalent uninsured motorist coverage was still in effect at the time of his death, and appellee was not a "named insured" pursuant to the insurance policy. Accordingly, Nationwide's second assignment of error is well taken.

Upon consideration, we find Nationwide's third assignment of error, in which it asserts that the trial court erred when it ordered Nationwide to pay money

damages in the amount of $287,500 to appellee in a declaratory judgment action, to be moot.

Nationwide asserts in its fourth assignment of error that the trial court abused its discretion by awarding attorney fees in a declaratory judgment action.

Generally, "an award of attorney fees must be predicated on statutory authorization or upon a finding of conduct which amounts to bad faith." *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153, 156. However, R.C. 2721.09 provides in part:

"Whenever necessary or proper, further relief based on a declaratory judgment or decree previously granted may be given. The application therefor shall be by petition to a court having jurisdiction to grant the relief."

The Supreme Court of Ohio has interpreted the above to mean that a trial court has the authority under R.C. 2721.09 to grant or deny a request for attorney fees based on a declaratory judgment issued by the court. Such a determination "will not be disturbed, absent an abuse of discretion." *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, at the syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In deciding whether or not to award attorney fees in a declaratory judgment action, the trial court is to place no legal significance on the insurer's conduct or "on which party actually prevails in the underlying action. Rather, the only limitation placed on the trial court is that the relief must be 'necessary or proper.'" *Brandenburg, supra,* 72 Ohio St.3d at 160, 648 N.E.2d at 490.

Upon consideration of the record of proceedings and the law, this court cannot find that the trial court necessarily abused its broad discretion by finding that attorney fees were "necessary or proper" in this case. Accordingly, Nationwide's fourth assignment of error is not well taken.

Nationwide asserts in its fifth assignment of error that the trial court erred by basing its award of attorney fees on the forty percent contingent fee entered into by the parties, rather than an hourly fee for legal services actually rendered.

As set forth above, pursuant to R.C. 2721.09, it is within the trial court's discretion to assess attorney fees in declaratory judgment actions involving

uninsured motorist insurance. *Brandenburg, supra.* The trial court's decision to base such an award on a contingent fee contract will be overturned on appeal if it constitutes an abuse of discretion. *Landis v. Grange Mut. Ins. Co.* (Feb. 21, 1997), Erie App. No. E–96–034, unreported, 1997 WL 77546.

In *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 469–470, the Supreme Court of Ohio stated that the factors to be considered by the trial court in awarding attorney fees are " '(1) the time and labor involved in maintaining * * * [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorney, and (5) the miscellaneous expenses of * * * [the] litigation.' " *Id.* at 41, 543 N.E.2d at 470, quoting *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 200, 17 OBR 432, 436–437, 478 N.E.2d 1000, 1004–1005.

In *Landis, supra,* this court found that it is an abuse of discretion for a trial court to adopt a private contingent fee agreement as the basis of an award of attorney fees in a case involving uninsured motorist insurance without considering the factors set forth in *Villella, supra.* In making that finding, we reasoned that although contingent fee agreements serve an important function in our legal system, the parties to such an agreement are the attorney and his or her client, and it is "fundamentally unfair" for the trial court to hold a third-party adversary to the terms of "someone else's bargain." *Landis, supra.*

Upon consideration of the foregoing and our disposition as to Nationwide's first two assignments of error, this court finds that the trial court abused its discretion when it awarded attorney fees based on the terms of the contingent fee contract between appellee and the Murray firm. Accordingly, Nationwide's fifth assignment of error is well taken.

■ In their sole cross-assignment of error, appellees/cross-appellants assert that the trial court erred by summarily denying their request for prejudgment interest pursuant to R.C. 1343.03(A).

In *Landis, supra,* this court held that a successful claimant in an uninsured/underinsured motorist case is entitled to prejudgment interest pursuant to R.C. 1343.03(A), which generally provides for prejudgment interest on money when it becomes "due and payable" on a contract. We further found in *Landis, supra:*

"The accumulation of [prejudgment] interest pursuant to R.C. 1343.03(A) begins on the date the claim becomes due and payable irrespective of any ancillary tortious conduct elements."

█ It is well settled that the purpose of awarding prejudgment interest is to make the aggrieved party whole. *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 117, 652 N.E.2d 687, 692–693. Accordingly, in *Myers v. Cent. Ins. Cos.* (1997), 119 Ohio App.3d 277, 286, 695 N.E.2d 49, 55, this court, further clarifying our holding in *Landis, supra,* stated:

"[W]ith regard to awarding prejudgment interest, the coverage owed in a UM case becomes due and payable when it is determined by a court, arbitrator, or by agreement of the parties that such a loss is covered."

In this case, pursuant to the agreement of the parties, Nationwide issued a $12,500 check, payable to Marilyn Stacy and the Murray firm, on May 24, 1984, only four months after Walter Stacy's death. Upon consideration of the foregoing, and our determinations as to Nationwide's second assignment of error, this court finds that the trial court did not err by denying appellees/cross-appellants' request for prejudgment interest, and their cross-assignment of error is not well taken.

On consideration whereof, this court finds further that substantial justice has not been done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded to the trial court for a redetermination as to whether attorney fees are "necessary and proper" in this case, and the amount of such fees, if any, based on the criteria set forth in *Villella, supra.* Court costs of these proceedings are to be assessed equally to appellant and appellees.

*Judgment affirmed in part
and reversed in part.*

MELVIN L. RESNICK and SHERCK, JJ., concur.