OPINION
{¶ 1} Defendant-appellant, Wausau Business Insurance Company ("Wausau"), appeals from a decision of the Madison County Court of Common Pleas rendering summary judgment against it and in favor of plaintiff-appellee, C. Phillip Wilson, individually and as administrator of the estate of Holly Wilson, with respect to appellee's claim for underinsured motorist ("UIM") coverage.
 {¶ 2} On November 27, 1997, Holly Wilson was killed in an automobile accident. The accident was caused by the negligence of Jason Haimerl. Haimerl was insured by the Allstate Insurance Company. Allstate tendered a settlement offer to Mrs. Wilson's representative of $100,000, representing the limits of Haimerl's policy.
 {¶ 3} At the time of the accident, Mrs. Wilson was employed by the Champaign County Educational Service Center ("CCESC"). CCESC was the named insured under a policy of commercial automobile liability insurance with Wausau. The policy covered the period from April 25, 1997 to April 25, 1998.
 {¶ 4} In October 2001, Mrs. Wilson's surviving spouse, C. Phillip Wilson, acting individually and as the administrator of Mrs. Wilson's estate, brought a complaint against several defendants, including Wausau, alleging, among other things, that Mrs. Wilson was entitled to up to $1 million in UIM benefits under CCESC's policy with Wausau, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, and Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 1999-Ohio-124. Both appellee and Wausau moved for summary judgment. In July 2002, the trial court issued a decision granting appellee's motion for summary judgment and denying Wausau's.
 {¶ 5} Wausau appeals from the trial court's judgment, raising one assignment of error:
 {¶ 6} "The trial court erred to the prejudice of defendant-appellant Wausau Business Insurance Company in denying its motion for summary judgment and in granting summary judgment in favor of plaintiffs-appellees."
 {¶ 7} Wausau raises two principal contentions under this assignment of error. First, Wausau argues that the trial court erred in granting summary judgment against it and in favor of appellee on the issue of whether appellee is entitled to UIM coverage under CCESC's policy with Wausau, pursuant to Scott-Pontzer. We disagree with this argument.
 {¶ 8} An appellate court engages in a de novo standard of review when considering an appeal from a decision granting summary judgment.Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. The trial court's decision granting summary judgment must be reviewed independently and without deference to the trial court's judgment. Id. In conducting its independent review, the appellate court applies the same standard as the trial court in determining a motion for summary judgment. Midwest Ford,Inc. v. C.T. Taylor Co. (1997), 118 Ohio App.3d 798, 800. Pursuant to Civ.R. 56(C), a trial court is to grant summary judgment only when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} In Scott-Pontzer, 85 Ohio St.3d 660, the court held that a plaintiff's decedent, who had been killed in an automobile accident that was caused by an underinsured motorist, was entitled to UIM coverage under his employer's commercial automobile liability policy. Id. at 665. The decedent's employer, a corporation, was the named insured under the policy, which defined an "insured" for purposes of UIM coverage as including, "[y]ou," and "[i]f you are an individual, any family member." Id. at 663. The court determined that the policy language concerning who was an "insured," was ambiguous, because the word "you," while referring to the corporation, also could be interpreted to include the corporation's employees, "since a corporation can act only by and through real live persons." Id. at 664. Citing the principle that ambiguous language in an insurance policy is to be construed liberally in favor of the insured and against the insurer, the court concluded that plaintiff's decedent was an insured under the policy for purposes of UIM coverage. Id. at 665. The court also concluded that plaintiff's decedent was entitled to UIM coverage even though he was not acting within the scope of his employment at the time the accident occurred, because the policy did not so limit UIM coverage. Id. at 666. In Ezawa, 86 Ohio St.3d 557, the court reversed an appellate court's ruling on the authority ofScott-Pontzer and extended UM benefits to the minor son of a corporation's employee.
 {¶ 10} CCESC's policy with Wausau defines an insured for purposes of UIM coverage in language identical to the policy at issue inScott-Pontzer. Because educational service centers, like corporations, can act only by and through real live persons, CCESC's employees are insureds under CCESC's policy with Wausau.
 {¶ 11} Wausau argues, however, that educational service centers like CCESC are not permitted to purchase uninsured motorist ("UM") or UIM coverage for their employees while they are acting outside the scope of their employment. We disagree with this argument.
 {¶ 12} R.C. 3311.055 provides that the terms "school board" and "board of education" include the governing board of educational service centers, and the term "school district" includes educational service centers. The version of R.C. 3313.201 that was in effect on April 25, 1997 at the beginning of the policy period for the insurance policy at issue here, provides:
 {¶ 13} "The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees and pupils of the school district against liability on account of damage or injury to persons and property, * * * including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle * * * owned or operated by the educational service center. Each board of education may supplement said policy or policies of insurance with collision, medical payments, comprehensive, and uninsured motorists insurance."
 {¶ 14} R.C. 3313.201 requires educational service centers to purchase liability insurance insuring its employees against liability arising from damage or injury to persons or property, including liability arising from death or accident by wrongful act, resulting from the operation of a motor vehicle owned or operated by the school district. R.C. 3313.201 permits an educational service center to supplement this liability coverage with, among other insurance, UM coverage. There is no requirement in R.C. 3313.201 that an educational service center's employee be acting within the scope of his or her employment with the educational service center at the time of an accident in order for UM coverage to apply in favor of that employee.
 {¶ 15} Wausau argues that the UM/UIM insurance that an educational service center is permitted to purchase under R.C. 3313.201 is limited to motor vehicles "owned and operated" by the educational service center. In support, Wausau points out that R.C. 3313.201 sets forth the liability insurance policy or policies an educational service center is required to purchase, and then provides that the educational service center "may supplement said policy or policies of insurance" with UM insurance. Wausau argues that "[t]he phrase `said policy or policies' can only refer to the previously identified liability policy, which only covers vehicles owned or operated by [the educational service center.] * * * Consequently, the uninsured motorist coverage only applies in the conditions applicable to the previously mentioned liability policy. Those requirements are that the policy only applies to a vehicle owned or operated by [the educational service center]." We disagree with this argument.
 {¶ 16} Wausau's proposed interpretation of R.C. 3313.201 ignores the plain meaning of the words used in the statute. R.C. 3313.201
requires an educational service center to procure an insurance policy or policies insuring the educational service center's officers, employees and pupils against liability arising from damages or injury to persons or property. The insurance an educational service center is required to purchase includes insurance for liability arising from death or accident by wrongful act, resulting from the operation of a motor vehicle owned or operated by the educational service center. R.C. 3313.201 permits an educational service center to supplement the liability insurance it is required to purchase, with several additional types of insurance, including UM coverage. But R.C. 3313.201 does not impose the restriction on those additional types of insurance coverages that Wausau seeks to impose here, namely, that the coverage afforded by the additional types of insurance, including UM coverage, only applies to vehicles owned or operated by the educational service center. Essentially, Wausau is asking this court to insert into the statute the requirement that any UM coverage purchased by an educational service center pursuant to R.C.3313.201 apply only to employees acting within the scope of their employment with the educational service center. However, it is well settled that a court has a duty to give effect to the words used in a statute, and to avoid deleting words used or inserting words not used; if the statute's meaning is unambiguous and definite, it must be applied as written. Bailey v. Republic Engineered Steels, Inc., 91 Ohio St.3d 38,39-40, 2001-Ohio-236.
 {¶ 17} The Sixth Circuit Court of Appeals has held in an unreported case that a school district's board of education does not have the statutory authority to purchase UM/UIM coverage for school district employees acting beyond the scope of their employment. See NationwideAgribusiness Ins. Co. v. Roshong (C.A.6, 2002), No. 01-4009, unreported. However, all appellate courts in this state that have ruled on the issue have found otherwise. See, e.g., Mizen v. Utica Nat'l. Ins. Group,147 Ohio App.3d 274, 280, 2002-Ohio-37, and Roberts v. Wausau BusinessIns. Co., 149 Ohio App.3d 612, 619-620, 2002-Ohio-4734.
 {¶ 18} Wausau also argues that an educational service center lacks authority to purchase UM/UIM insurance for its employees who are acting outside the scope of their employment, because R.C. 2744.01(B) defines "employee" as an individual "acting within the scope of his employment for a political subdivision." But the definition of "employee" found in R.C. 2744.01(B) is expressly limited to use of the term "[a]s used" in R.C. Chapter 2744. The provisions of R.C. Chapter 2744 relate to the tort liability of political subdivisions; hence, R.C. 2744.01(B)'s definition of "employee" has no application to a case involving the scope of authority of a school district's board of education under R.C. 3313.201, and the interpretation of UM/UIM provisions of a commercial automobile liability insurance policy. See Mizen, 147 Ohio App.3d at 280.
 {¶ 19} In light of the foregoing, we conclude that Mrs. Wilson was a named insured under CCESC's policy with Wausau, and, therefore, appellee is entitled to UIM coverage.
 {¶ 20} Wausau's second contention is that even if appellee is entitled to recover UM/UIM benefits under CCESC's policy, the trial court nevertheless erred in determining that appellee was entitled to UIM coverage in the amount of $1 million, because CCESC intended to increase only its liability coverage to that amount, not its UIM coverage. We find this argument unpersuasive.
 {¶ 21} The policy at issue, which covered the period from April 25, 1997 to April 25, 1998, initially provided CCESC with $500,000 in both liability and UM/UIM coverage. Effective August 6, 1997, which was several months prior to Mrs. Wilson's death, CCESC's liability insurance was increased to $1 million. On April 1, 1998, after Mrs. Wilson's death, CCESC executed a document electing to reduce its UIM coverage to $500,000.
 {¶ 22} The applicable version of R.C. 3937.18 states in relevant part:
 {¶ 23} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 {¶ 24} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
 {¶ 25} "* * *
 {¶ 26} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage."
 {¶ 27} Under former R.C. 3937.18(A), for an insurer to provide less UM coverage than liability coverage, the insured must expressly reject such coverage from the insurer; equivalent amounts of liability and UM/UIM coverage are provided by operation of law if the insured does not expressly reject them. See Anderson v. Hartford Underwriters Ins.Co. (1994), 96 Ohio App.3d 341, 345. The insurer has the burden of proving that the insured rejected UM/UIM coverage in an amount equivalent to his liability coverage. Id. at 345-346.
 {¶ 28} Here, Wausau essentially concedes that CCECS did not expressly reject UM/UIM coverage in an amount equivalent to its liability coverage. Nevertheless, Wausau asserts that R.C. 3937.18(A) was not violated in this case because when the policy was delivered on April 25, 1997, UM/UIM coverage was in an amount equivalent to liability coverage. But Wausau has presented no authority in support of its argument that R.C. 3937.18(A) does not apply in cases where the policy's amount of liability insurance is increased during the policy period, nor have we found any. Cf. Stacy v. Nationwide Mut. Ins. Co. (1998),125 Ohio App.3d 658, 668 (neither R.C. 3937.18[A] nor the case law require that an insurer have an insured sign a new statement rejecting the requirement that his UM/UIM coverage be equivalent to his liability coverage every time the insured replaces a vehicle covered by the original policy).
 {¶ 29} We conclude that when Wausau increased the limits of CCESC's liability coverage during the policy period from April 1997 to April 1998, it was required to offer CCESC an equivalent increase in UM/UIM coverage, pursuant to former R.C. 3937.18(A). Failure to make such an offer to CCESC and to obtain CCESC's express rejection of such coverage resulted in an increase in UM/UIM coverage equivalent to the increase in liability coverage, by operation of law. Anderson,96 Ohio App.3d at 345.
 {¶ 30} In light of the foregoing, we conclude that the trial court did not err in finding that appellee is entitled to $1 million in UIM coverage under CCESC's policy with Wausau.
 {¶ 31} Wausau's assignment of error is overruled.
 {¶ 32} The trial court's judgment is affirmed.
YOUNG and POWELL, JJ., concur.