MYERS, Appellant,

v.

**CENTRAL INSURANCE COMPANIES, Appellee.**

[Cite as *Myers v. Cent. Ins. Cos.* (1997), 119 Ohio App.3d 277.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–96–036.

Decided May 2, 1997.

278

*Barry W. Vermmeren*, for appellant.

*James W. Hart* and *Randolph E. Digges III*, for appellee.

KNEPPER, Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas which granted the motion for summary judgment filed by appellee Central

Insurance Companies ("Central") and denied the motion for summary judgment filed by Mark A. Myers, appellant. Based on the interpretation of Central's automobile insurance policy, the trial court held that appellant was not entitled to a separate per-person limit of uninsured-motorists coverage for his damages derived from the bodily injury sustained by Camile B. Myers. For the reasons that follow, this court reverses the judgment of the trial court.

On appeal, appellant sets forth the following as his assignment of errors:

"1. The judgment is not sustained by the evidence and is against the manifest weight of the evidence.

"2. The judgment is contrary to law."

### FACTS

The undisputed facts which are relevant to the issues raised on appeal are as follows. On October 23, 1990, Camile Myers, daughter of Kay Cee Berkey and appellant, was injured in an automobile accident caused solely by the negligence of Berkey. As a direct and proximate result of the accident, Camile Myers incurred medical bills in excess of $140,000. At the time of the accident, Berkey was insured by Central. The policy declarations provided that the liability limits for bodily injury were $100,000 per person and $300,000 per accident. On or about July 23, 1992, Central tendered to appellant, under the uninsured-motorists coverage of its policy, the sum of $100,000 in full settlement of the claims of Camile Myers and appellant, in his capacity as guardian of the estate of Camile Myers. Additionally, Central tendered to appellant the sum of $5,000 under the medical payments coverage portion of the policy. On January 8, 1996, appellant, in his individual capacity, filed a complaint for declaratory judgment in the Huron County Court of Common Pleas.

Appellant alleged in his complaint that he was entitled to his own $100,000 in "uninsured motorist benefits due to the injury of his child and the resultant medical expenses." Appellant also claimed that he was entitled to prejudgment interest from October 23, 1990. He claimed that Central refused payment because of a dispute regarding the meaning and interpretation of Central's policy.

Central denied that appellant was entitled to the relief sought. Further, Central agreed that a dispute existed regarding the interpretation of the policy.

The parties filed cross-motions for summary judgment. The relevant portions of the policy concerned coverage for damages caused by uninsured motorists. It is undisputed that when the policy was first issued in 1989, it contained both a provision entitled "PART C—UNINSURED MOTORISTS COVERAGE" and an endorsement that replaced a portion of Part C. The pertinent portion of Part C provided:

"LIMIT OF LIABILITY

"A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

"1. 'Insureds;'

"2. Claims made;

"3. Vehicles or premiums shown in the Declarations; or

"4. Vehicles involved in the accident."

The endorsement, located on the back jacket of the policy ("jacket endorsement"), replaced this portion of Part C and limited the amount of uninsured-motorists coverage available on all claims made as a result of a single bodily injury to the per-person limit. The jacket endorsement provided in part:

"SPLIT UNINSURED MOTORISTS LIMITS

"The first paragraph of the Limit of Liability provision in Part C is replaced by the following:

"LIMIT OF LIABILITY

"The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury' sustained by any one person in any one accident."

In the August 28, 1990 renewal contract, the contract that was in effect at the time of the accident, a second endorsement had been added, which replaced Part C of the basic contract. This second endorsement stated:

"UNINSURED MOTORISTS COVERAGE AMENDMENT—OHIO

" * * *

"Part C Uninsured Motorists Coverage is replaced by the following:

" * * *

"LIMIT OF LIABILITY

"The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

"1. 'Insureds';

"2. Claims made;

"3. Vehicles or premiums shown in the Declarations; or

"4. Vehicles involved in the accident."

The parties do not dispute that, read alone, this second endorsement provides for a separate per-person limit for each insured who suffers damage even if there is but one bodily injury.

In its motion for summary judgment, Central contended that appellant was not entitled to recover any additional uninsured-motorists coverage because it had already tendered to appellant the maximum limit of liability for uninsured-motorists coverage under the policy for bodily injury sustained by any one person in any one accident. Central asserted that according to the declarations page, both the jacket endorsement and the second endorsement were applicable. Central argued that the second endorsement entirely replaced Part C, thereby becoming Part C. As a result, the jacket endorsement then replaced the limit of liability portion of the second endorsement because the second endorsement had become Part C. Hence, the amount of uninsured-motorists coverage available on all claims made as a result of a single bodily injury was again limited to the per-person limit.

Further, Central argued that the two endorsements were not in conflict with one another, as they were both applicable forms in the policy. By both endorsements being applicable, the jacket endorsement specifically provided that it replaced the first paragraph of the limit of liability portion of the second endorsement. Hence, they were not competing endorsements.

Central also argued that appellant was not entitled to recover prejudgment interest on $100,000, because even if appellant were entitled to recover uninsured-motorists coverage, the amount was not liquidated.

In his motion for summary judgment, appellant asserted that since the jacket endorsement stated that it replaced a part, rather than an endorsement, the trial court could not find that the jacket endorsement applied to the second endorsement. Accordingly, the only possible reading is "that the only applicable [uninsured-motorists] language is that of the 'UNINSURED MOTORISTS COVERAGE AMENDMENT—OHIO,'" which provided that there was a separate per-person limit for each insured who suffered damage, even if there was but one bodily injury. Appellant further argued that the endorsements were in conflict and, therefore, based on Ohio law, the contract must be construed in favor of the insured and the second endorsement was controlling. Finally, appellant asserted that he was entitled to prejudgment interest.

The trial court found in favor of Central. The trial court found that the jacket endorsement applied to the second endorsement:

"The Court finds that Form PP0401, the Split Uninsured Motorists Coverage Limits endorsement which appears on the back of the policy jacket, replaces the

Limit of Liability section of Part C—Uninsured Motorists Coverage, which is set forth in amendatory endorsement Form 3–1434–1 [the second endorsement]."

It is from this judgment that appellant appeals.

Appellant asserts in his "assignment of errors" that the trial court's judgment was contrary to law and not sustained by the evidence. The arguments presented by the parties are substantially the same as those asserted in their motions for summary judgment and, therefore, will not be repeated herein.

## LAW AND ANALYSIS

In reviewing a summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

This court finds that *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913, is dispositive of this case. Generally, the Supreme Court's decisions apply retrospectively, and "the effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468. This rule applies except when "contractual rights have arisen or vested rights have been acquired under the prior decision." *Id.* Case law interpreting remedial legislation, such as R.C. 3937.18, does not establish a substantive right in which a party could claim a vested interest. *Cartwright v. Maryland Ins. Group* (1995), 101 Ohio App.3d 439, 443, 655 N.E.2d 827, 829. Hence, although the decision in *Schaefer* was rendered after the present matter was initiated and decided in the trial court, *Schaefer* applies retrospectively to this case. According to *Schaefer,* the jacket endorsement is unenforceable. That being so, this court finds that it is not necessary to determine whether the jacket endorsement replaces any portion of the second endorsement.

In *Schaefer,* the Ohio Supreme court held that a person has available to him a separate per-person policy limit when he is covered by an uninsured-motorists policy and is legally entitled to recover damages under a separate claim from that of the injured insured's. Any provision in an insurance policy which reaches a contrary result is unenforceable. The court in *Schaefer* specifically considered whether an insured asserting a personal injury claim and an insured asserting a loss-of-consortium claim shared a single per-person limit of uninsured-motorists coverage, or whether the insureds had available to them separate per-person limits to provide compensation for their own claims. The court held:

"In answering this question, we must determine the validity, in light of recent case law, of an automobile insurance policy provision which limits recovery for all causes of action arising out of bodily injuries sustained by one person to a single per person limit. * * * [W]e find such a provision unenforceable." *Schaefer*, 76 Ohio St.3d at 555, 668 N.E.2d at 915.

Although the court specifically addressed a loss-of-consortium claim, its holding is applicable to the present case. In the court's rationale, it noted that the public policy considerations of the uninsured-motorists statute, R.C. 3937.18(A)(1), is " 'to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.' " *Id.*, quoting *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440, citing *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 231, 258 N.E.2d 429, 432. Additionally, "since R.C. 3937.18(A)(1) is remedial legislation, it must be liberally construed in order to effectuate the legislative purpose." *Id.*, citing *Martin* at 480, 639 N.E.2d at 440, citing *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 54 O.O.2d 166, 266 N.E.2d 566. If an insurance policy provision is contrary to the statute and its purpose, it will be deemed unenforceable. *Id.*, citing *Martin* at 480, 639 N.E.2d at 440–441.

The *Schaefer* case overruled *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716, and *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789, paragraph two of the syllabus. In Dues, the court held that "[a]n insurance policy provision that limits recovery for all causes of action arising out of bodily injury to one person to a single limit of liability is a valid restriction of uninsured motorist coverage." *Dues* at paragraph two of the syllabus. In applying *Dues*, *Tomlinson* held that a loss-of-consortium claim was not a separate claim for relief and an insurer may limit all claims arising out of a single bodily injury to a single per-person limit of coverage. *Tomlinson*, at paragraphs one and two of syllabus. The court in *Schaefer* criticized the *Dues* decision because it "disregards the rule that language in an insurance policy must be read strictly in favor of the insured and contravenes the public policy concern that uninsured motorist coverage is to protect motorists from the dangers of uninsured motorists." *Schaefer*, 76 Ohio St.3d at 556, 668 N.E.2d at 916.

In light of the *Dues* and *Tomlinson* decisions and the decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, the *Schaefer* court attempted to "bring stability, consistency, and clarity to the state of automobile insurance law in Ohio." *Schaefer*, 76 Ohio St.3d at 557, 668 N.E.2d at 916. In *Savoie*, the court found that a wrongful death beneficiary has a separate claim subject to a separate per-person limit under an uninsured-motorists policy. *Savoie*, at paragraph one of the syllabus. The *Schaefer* court held that "the logic of the decision in *Savoie* should now be applied to loss of consortium claims in

personal injury cases." *Schaefer* at 557, 668 N.E.2d at 916. The court found that in determining whether a party should be entitled to a separate per-person limit turns on whether the parties have suffered a "separate injury":

"The fact that loss of consortium is a creation of the common law does not meaningfully differentiate spouses bringing those actions from spouses who are beneficiaries under the wrongful death statute. *It is the separate injury* which parties to both kinds of claims suffer *that entitle them to separate per person limits.*" (Emphasis added.) *Schaefer*, at 557, 668 N.E.2d at 917.

■ In the case at hand, appellant has a separate and distinct cause of action which entitles him to relief:

"Where a minor child sustains an injury allegedly as the result of negligence of a defendant, two separate and distinct causes of action arise: an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his *medical expenses*. (Paragraph three of the syllabus of *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, approved and followed.)" (Emphasis added.) *Grindell v. Huber* (1971), 28 Ohio St.2d 71, 57 O.O.2d 259, 275 N.E.2d 614, paragraph one of the syllabus.

Appellant is an insured, he has a separate injury, and, in keeping with public policy considerations, he should be protected with uninsured-motorists coverage from losses which would otherwise go uncompensated. Therefore, in accordance with *Schaefer*, this court finds as a matter of law that appellant is entitled to a separate per-person limit of uninsured-motorists coverage for his damages. The jacket endorsement attempts to limit both Camile Myers's and appellant's damages to a single per-person limit of recovery. According to *Schaefer*, such a provision is unenforceable. Therefore, the trial court erred as a matter of law in finding that no additional uninsured-motorists coverage is available for appellant's claim under the policy. After construing the evidence in a light most favorable to the appellee, this court finds that no genuine issue of material fact exists and appellant is entitled to summary judgment as a matter of law.

■ Appellant additionally asserts that he is entitled to prejudgment interest on the $100,000 that is recoverable under his uninsured-motorists coverage. This court quite recently concluded that a successful plaintiff in an action claiming uninsured/underinsured-motorists ("UM") coverage is entitled to prejudgment interest pursuant to R.C. 1343.03(A). *Landis v. Grange Mut. Ins. Co.* (Feb. 21, 1997), Erie App. No. E–96–034, unreported, 1997 WL 77546, discretionary appeal allowed in (1997), 79 Ohio St.3d 1421, 680 N.E.2d 158, and *Reineck v. Westfield Natl. Ins. Co.* (March 21, 1997), Huron App. No. H–96–037, unreported, 1997 WL

133322. Relying on *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687, this court held:

"[W]hen, by the terms of his or her insurance contract, a litigant is entitled to uninsured/underinsured insurance coverage, the accumulation of interest pursuant to R.C. 1343.03(A) begins on the date the claim becomes due and payable irrespective of any ancillary tortious conduct elements." *Landis*, at 6–7.

In so ruling, the court concluded that a declaratory judgment action was based in contract, not in tort. *Id.* at 5–6.

The purpose of awarding prejudgment interest is to make the aggrieved party whole. *Royal Elec.*, 78 Ohio St.3d at 117, 652 N.E.2d at 692–693. And uninsured-motorists coverage "is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 231, 258 N.E.2d 429, 432. With these principles in mind, this court is of the opinion that there is an inherent problem with awarding prejudgment interest in UM cases that do not involve bad faith.

Absent a failure to settle in good faith, a person injured by an insured tortfeasor cannot recover prejudgment interest. R.C. 1343.03(C), whereas a party with UM coverage who is injured by an uninsured or underinsured tortfeasor can recover prejudgment interest from his own carrier, regardless of "any ancillary tortious conduct." *Landis, supra*, at 6–7. This results in the injured party recovering more money overall than he would have recovered from an insured tortfeasor. Such a result is contrary to the purpose of the prejudgment interest statute because it makes the aggrieved party more than whole by giving him an award of prejudgment interest that he would typically not be entitled to receive from an insured tortfeasor. Awarding prejudgment interest also defeats the purpose behind UM coverage because, if a party was injured by an *insured* tortfeasor, he would not be compensated with prejudgment interest.

Despite this disparity, pursuant to the doctrine of *stare decisis*, this court finds that appellant is entitled to prejudgment interest on his uninsured-motorists claim. See *Landis, supra*. However, as this is an issue of statewide interest, this court believes that instruction on this issue should come from the Ohio Supreme Court.

Judge Glasser dissented in both *Landis* and *Reineck* from the application of *Royal Elec.* to uninsured- or underinsured-motorists claims, stating that an "indication of the inapplicability of *Royal Elec.* * * * is the failure [of this court] to specifically determine when the claim accrued to ascertain when such prejudgment interest would commence." *Reineck, supra* (Feb 21, 1997), Erie App. No.

H–96–037, at 5. This court recognizes that without further instruction, trial courts statewide could find any number of times from which a claim for UM coverage could accrue, for example, when the injury occurs, when suit is filed, when the injured party settles with an underinsured tortfeasor, when the insurance company is notified of the loss, when the insurance company denies UM coverage, when the parties agree or when a court or arbitrator determines that coverage is owed, or when the amount that is owed is determined by a court, an arbitrator, or the parties. In an effort to avoid inconsistent results in the trial courts, this court finds that *Landis* should be clarified with respect to when UM coverage becomes due and payable.

In determining the time of accrual in such cases, this court must consider all the policy considerations behind UM coverage and prejudgment interest. In addition to making the aggrieved party whole, the purpose of awarding prejudgment interest is to encourage prompt settlement and discourage defendants from opposing and prolonging, between injury and judgment, legitimate claims. *Royal Elec., supra,* 73 Ohio St.3d at 116–117, 652 N.E.2d at 691–693.

Insurance contracts are unique in that they do not engage unless the insured has sustained some covered loss. This court finds that, with regard to awarding prejudgment interest, the coverage owed in a UM case becomes due and payable when it is determined by a court, arbitrator, or by agreement of the parties that such a loss is covered. The policy considerations behind awarding prejudgment interest and providing UM coverage are well served by finding that prejudgment interest accrues from this point. Once it is determined that coverage is owed, insurers will be encouraged to promptly settle on the amount owed. Also, the insured is made whole by recovering all losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.

In this case, appellant seeks an award of prejudgment interest on $100,000, the full limit of his uninsured-motorists coverage. Although this court finds that appellant is entitled to prejudgment interest, it is not certain that appellant will recover the full $100,000 of coverage in the trial court. Therefore, this court cannot grant appellant's request for prejudgment interest on the specific amount of $100,000, as that request is premature.

Accordingly, this court finds appellant's assignment of errors well taken. On consideration whereof, this court finds that substantial justice has not been done the party complaining. This case is reversed as to the judgment of the Huron County Common Pleas Court in favor of Central and remanded to the trial court for determination of the amount of coverage and interest owed to appellant. Costs to be assessed against Central.

*Judgment reversed.*

MELVIN L. RESNICK, P.J., concurs.

GEORGE M. GLASSER, J., concurs in judgment only.

GLASSER, Judge, concurring.

Although I concur in many respects with the opinion, I must disagree with the application of *Royal Elec.* to uninsured- and underinsured-motorists claims to substantiate the award of prejudgment interest in uninsured- and underinsured-motorists claims. The opinion's excellent discussion on when such coverage becomes due and payable reinforces my concern as to the applicability of *Royal Elec.* to these matters. As I stated in the *Landis* and *Reineck* dissents, hopefully the Supreme Court of Ohio will determine this issue at the earliest possible time to avoid the continuing expenditure of judicial energy on this subject in the various lower courts of the state.