BOWMAN et al., Appellants,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellee, et al.

[Cite as *Bowman v. Progressive Cas. Ins. Co.* (1999), 136 Ohio App.3d 259.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990281.

Decided Dec. 10, 1999.

*Cors & Bassett* and *Michael L. Gay,* for appellants.

*Busald, Funk, Zevely, P.S.C.,* and *Joseph A. McGee,* for appellee.

PAINTER, Judge.

We are again presented with a conundrum involving uninsured motorist coverage. Our court has yet to rule on the following issue: When, if ever, is prejudgment interest properly awarded on uninsured motorist claims?

On March 22, 1993, plaintiff-appellant Angie Lynn Bowman was injured in a car crash caused by Lawrence Engel, an uninsured motorist. In March 1995, Bowman and her husband filed suit against defendant-appellee Progressive Casualty Insurance Company for recovery of uninsured-motorist benefits. The Bowmans had three automobile policies with Progressive, which the parties had agreed could be stacked for a total of $300,000 in uninsured motorist coverage. (The Bowmans were residents of Kentucky, and the parties applied Kentucky law regarding stacking.) Progressive did not dispute that the Bowmans were entitled to coverage, and the parties agreed that damages fell somewhere within this coverage. But they could not agree on a specific amount.

The case went to trial, and the court granted a directed verdict against the Bowmans, holding that they had failed to establish that Mrs. Bowman's injuries

were caused by the accident. This court reversed the judgment of trial court and remanded the cause for further proceedings.[1]

The case proceeded until January 7, 1999, when the parties signed a consent judgment in which Progressive agreed to pay the Bowmans $112,500. The parties also agreed that the trial court would determine whether the Bowmans were entitled to prejudgment interest. There was no bad-faith claim against Progressive, and the parties agreed that R.C. 1343.03(A) was the relevant statute governing prejudgment interest. R.C. 1343.03(A) states: "[W]hen money becomes due and payable upon any * * * instrument of writing * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum."

The trial court held that the Bowmans were not entitled to prejudgment interest under R.C. 1343.03(A). The court stated that the Bowmans' suit was "based in tort, not on a contractual relationship between the parties." The court held that, because R.C. 1343.03(A) governs claims arising from contracts, not torts, prejudgment interest could not be granted. The court then explained its interpretation of R.C. 1343.03(A): "Moreover, R.C. 1343.03(A) limits the interest payment to the occasion when 'money becomes due and payable.' Such event does not occur here until there is a judgment. * * * In the instant case, this 'due and payable event' would be when there is a judgment in favor of the plaintiff, either by agreement or after a trial."

The Bowmans now appeal. In their sole assignment of error, they assert that the court erred in denying them prejudgment interest. They raise two issues. First, they argue that the court erred in holding that this case is based on tort, not on contract. We need not address this issue because Progressive concedes that the trial court erred. In fact, the Ohio Supreme Court has held that uninsured motorist claims are contract claims and that prejudgment interest can be granted under R.C. 1343.03(A).[2] Thus, we turn to the second issue raised by the Bowmans: from what date should prejudgment interest be awarded?

■ Here, the key issue is determining when benefits under the Bowmans' uninsured motorist coverage became "due and payable"[3] under R.C. 1343.03(A). The Bowmans argue that benefits became due on March 22, 1993, the date of

---

1. *Bowman v. Engel* (Apr. 3, 1998), Hamilton App. No. C–960652, unreported, 1998 WL 151065.

2. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141.

3. We are unaware of any legal distinction between the words "due" and "payable." Thus, we only use the word "due" in the rest of this opinion.

Mrs. Bowman's accident. Thus, the Bowmans claim, prejudgment interest should be calculated from that date. On the other hand, Progressive argues that its benefits became due on January 7, 1999, the date the parties entered into the consent judgment. Because Progressive paid the judgment on January 7, it asserts that no interest is due. The trial court agreed with Progressive on this issue, holding that no money becomes due on an uninsured claim until judgment. But such a rule would deny prejudgment interest in *all* such claims, and is directly contrary to Ohio Supreme Court precedent.[4]

In *Royal Elec. Constr. Corp. v. Ohio State Univ.*,[5] the Ohio Supreme Court interpreted R.C. 1343.03(A). The court explained the policy behind prejudgment interest: "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages * * *, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole."[6] In light of these principles, the court stated that the relevant question in awarding prejudgment interest is the following: "Has the aggrieved party been fully compensated?"[7] *Royal Electric* was a contract claim, where the amount due was disputed. In that case, the court did away with the old "liquidated/unliquidated" distinction, a distinction originally based on a misinterpretation of earlier precedent.

Later, in *Landis v. Grange Mut. Ins. Co.*,[8] the Ohio Supreme Court specifically addressed the issue of prejudgment interest in the context of uninsured/underinsured-motorist ("UM") claims. In that case, the court determined that an insured was entitled to prejudgment interest on a UM claim. The court, though, declined to determine when the claim became due: "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine."[9]

---

4. See *Landis, supra.*

5. (1995), 73 Ohio St.3d 110, 652 N.E.2d 687.

6. *Id.* at 116–117, 652 N.E.2d at 692.

7. *Id.* at 116, 652 N.E.2d at 692.

8. *Landis, supra* (fn. 2).

9. *Id.* 82 Ohio St.3d at 342, 695 N.E.2d at 1142.

The fact that the *Landis* court did not set forth a rule regarding when UM benefits become due—and, instead, remanded the case to the trial court—has caused confusion in subsequent decisions. One case, *Myers v. Cent. Ins. Cos.*,[10] in dicta, attempted to clarify when UM benefits become due under R.C. 1343.03(A). It held, as a matter of law, that prejudgment interest in a UM case "becomes due and payable when it is determined by a court, arbitrator, or by agreement of the parties that such a loss is covered."[11] Other courts have rejected the rule stated in *Myers*.[12] The trial court on remand in the *Landis* case, for instance, suggested that the issue of when a UM claim becomes due should not be governed by a fixed rule; rather, the court posited that the issue should be resolved by trial courts on a case-by-case basis. It then held that, in that particular case, the UM claim became due on the date of the accident.[13]

Thus, regarding prejudgment interest in uninsured motorist cases, courts do not treat the issue uniformly. In fact, as summarized by Judge Brogan in *Craig v. Grange Ins. Co.*,[14] appellate courts have taken at least three different views: (1) some courts have held that benefits became due at the time of the injury,[15] (2) other courts have concluded that benefits became due at the time that the parties, a court, or an arbitrator determined that there was coverage,[16] (3) and another court has held that prejudgment interest could not be awarded, because benefits did not become due until there was a verdict.[17] Judge Brogan opined that the wide variance in these cases demonstrates that trial courts should have broad discretion in determining when benefits become due.[18]

We believe that counsel for both the insurer and the insured are entitled to more guidance from the courts. If each case must proceed to judgment before the issue of prejudgment interest is determined in the discretion of the trial

---

10. (1997), 119 Ohio App.3d 277, 695 N.E.2d 49.

11. *Id.* at 286, 695 N.E.2d at 55; see, also, *Cotner v. United States Fid. & Guar. Co.* (1998), 126 Ohio App.3d 664, 674, 711 N.E.2d 248, 255 (citing *Myers* ).

12. See *Landis v. Grange Mut. Ins. Co.* (1999), 100 Ohio Misc.2d 31, 36, 717 N.E.2d 1199, 1203; *Beal v. State Farm Ins. Co.* (1999), 132 Ohio App.3d 203, 207–208, 724 N.E.2d 860, 863.

13. *Landis*, 100 Ohio Misc.2d at 35, 717 N.E.2d at 1202.

14. (Nov. 5, 1999), Montgomery App. No. 17675, unreported, 1999 WL 999799, at *4.

15. See *Landis v. Grange Mut. Ins. Co.*, 100 Ohio Misc.2d 31, 717 N.E.2d 1199; *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470, 688 N.E.2d 563.

16. See *Myers v. Central Ins. Cos.* (1997), 119 Ohio App.3d 277, 695 N.E.2d 49.

17. See *Eagle American Ins. Co. v. Frencho* (1996), 111 Ohio App.3d 213, 675 N.E.2d 1312.

18. See *Craig*, at *5.

court—or perhaps worse, if trial courts each develop their own policy toward prejudgment interest—the parties are left without an intelligent basis on which to resolve the issue. Also, identical cases could reach different results in different courtrooms. We would prefer a "bright-line rule" so that the decisional cost would be diminished.

One problem, though, with developing such a rule is that there are many permutations of the problem. Different cases present different scenarios. We recognize the difficulty of creating a rule that could encompass all situations, and we recognize that any rule we create might be subject to exceptions and limitations. With that in mind, we believe that, in general, there are two differing situations that are relevant to crafting our rule: (1) cases where the determined amount of coverage for the insured is less than his or her damages, and (2) cases where the determined amount of coverage for the insured exceeds his or her damages.

■ In the former cases—where the amount of coverage is less than the insured's damages—prejudgment interest should be due from the date of the accident. This rule makes sense because the insured will never be fully compensated for his or her injuries. Because the damages exceed the insurance available, the date of the accident is the most reasonable date to pick. Every day after the accident, the real amount of coverage shrinks, and the insured will receive less with each passing day. The prejudgment interest thus helps to "make the aggrieved party whole," as required by *Royal Electric*.[19] In other words, the prejudgment interest will help put the insured closer to the amount of recovery he or she would have received if the tortfeasor had been adequately insured.[20] This was the situation in *Landis*, and upon remand the trial court awarded prejudgment interest.[21]

■ On the other hand, in the latter cases—where the insured's coverage exceeds his or her damages—the above rule makes less sense. If the amount of coverage is determined by an arbitrator or at trial, for instance, the arbitrator or factfinder should take into consideration all damages, past and future, and the judgment should be discounted to present value so that the damages awarded *at the time of the judgment* will fully compensate the insured—just as in the normal tort case. Allowing prejudgment interest in such situations would grant the insured a double recovery. Thus, we conclude that, in such cases, where the

---

19. *Royal Electric*, 73 Ohio St.3d at 117, 652 N.E.2d at 692.

20. See *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 52, 62 O.O.2d 406, 408, 294 N.E.2d 665, 666.

21. *Landis v. Grange Mut. Ins. Co.*, 100 Ohio Misc.2d 31, 717 N.E.2d 1199.

insured's coverage exceeds his or her damages, prejudgment interest should generally not be awarded. This rule is buttressed by analogy to the normal tort claim—prejudgment interest is not awarded unless the trial court finds that the insurer has failed to make a good-faith attempt to settle.[22] Also, the rule is in accord with the principle that the purpose of uninsured motorist coverage is to put the insured in the same position as if the tortfeasor were insured, not a better one.[23] A rule that prejudgment interest runs from the accident date would put a person injured by an uninsured driver in a *better* position than if he or she were injured by a person with adequate insurance—that person would receive the damages as if the other party were insured, plus interest.

■ Similarly, in cases where the insured's coverage exceeds his or her damages, a settlement between the parties should necessarily resolve the issue of what will make the insured whole. In other words, the issue of prejudgment interest should be resolved along with all other issues of damages. Thus, we conclude that, in the instance of a settlement, prejudgment interest is simply not an issue.

Here, the parties settled the case on the amount of damages, and the coverage was more than sufficient. Applying the above rule regarding settlements, we hold that, under R.C. 1343.03(A), the insurance benefits became "due and payable" on January 7, 1999, the date of the settlement.[24] Because Progressive paid the judgment on January 7, we hold that no prejudgment interest is due.

■ We note that the general rules that we enunciate in this opinion should apply to cases such as this one—cases where there are no allegations of bad faith. We recognize that, in cases where bad faith is alleged, the determination of when benefits become due should be more fact-specific. In such cases, trial courts might want to analogize to R.C. 1343.03(C), which governs lack-of-good-faith claims in tort actions. This is because of the public policy that UM coverage should put victims of accidents in the same position as if the tortfeasor had insurance. Though the action is in contract, the purpose of the contract is to equate the coverage with that of an insured tortfeasor. Thus, in bad-faith cases, analogizing to R.C. 1343.03(C) is the proper way to make the victim "whole," as required by *Royal Electric*.

---

22. R.C. 1343.03(B) and (C)

23. See *Bartlett*, 33 Ohio St.2d at 52, 62 O.O.2d at 408, 294 N.E.2d at 666.

24. We understand that the parties here were attempting to receive some guidance from this court on this issue of settlement, and we do not criticize the procedural expedient used here. But, in the future, a settlement must encompass the issue of prejudgment interest, if any. In the case here, as the coverage was adequate, prejudgment interest would not have been appropriate in any event.

But here, such an analogy and fact-specific analysis was not necessary, as we conclude that the settlement between the parties should have made the Bowmans whole. Therefore, we affirm the trial court, albeit on a different rationale.

*Judgment affirmed.*

HILDEBRANDT, P.J., and WINKLER, J., concur.