OPINION
{¶ 1} Appellant, Leva Reeves, administratrix of the estate of James Reeves ("James"), deceased, appeals the January 11, 2001 judgment entry of the Portage County Court of Common Pleas, in which the trial court granted summary judgment in favor of defendants, Paul Cunningham ("Paul") and Matt Cunningham ("Matt"), and appellee, State Farm Mutual Automobile Insurance Company.
 {¶ 2} On September 20, 1998, appellant's son, James, was a passenger on a dirt bike operated by Matt and owned by Paul. The dirt bike was involved in a collision with another dirt bike, and as a result, James died. Appellant filed a tort and contract action against Paul, Matt, and appellee on December 23, 1999. Appellant accepted a $300,000 settlement with the driver of the other dirt bike. Since Paul and Matt were uninsured, appellant made an uninsured/underinsured claim on her policy with appellee. Appellant's policy with appellee had a $100,000 per person limit.
 {¶ 3} On August 1, 2000, appellee filed a motion for summary judgment. Appellant filed a response to the motion on August 11, 2000. Thereafter, on October 16, 2000, Paul filed a motion for summary judgment, which the trial court denied. In a judgment entry dated January 11, 2001, the trial court granted appellee's motion for summary judgment. The trial court explained that the $300,000 settlement to appellant exceeded the $100,000 per person limit on the policy issued by appellee because, pursuant to R.C. 3937.18(E), appellee was entitled to a set-off. Appellant filed the instant appeal and now asserts a single assignment of error[1]:
 {¶ 4} "The trial court erred in determining that uninsured motorists coverage was unavailable to the claimants pursuant to a motor vehicle policy of insurance issued by appellee."
 {¶ 5} In the instant matter, the trial court granted summary judgment in favor of appellee. Appellant argues that the trial court erred in deciding that uninsured motorist coverage was not available to appellant pursuant to a motor vehicle policy of insurance issued by appellee. Essentially, appellant seems to be arguing that she should be allowed to collect $100,000 uninsured/underinsured motorist coverage under her policy with appellee. As support, appellant relies on MotoristsMut. Ins. Co. v. Tomanski (1971), 27 Ohio St.2d 222. Appellant also claims that, because the $300,000 settlement was divided among the beneficiaries of James' estate, the amount payable to each beneficiary was less than the $100,000 limit of the uninsured/underinsured motorist policy, and thus, the beneficiaries of the estate are entitled to receive underinsured motorist payments from appellee.
 {¶ 6} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 7} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "*** we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 8} Here, appellant claims for the first time that she received $63,797.39 and also states that she jointly received $155,000 with her nephew. However, the record on appeal contains the policy issued by appellee in effect at the time of the collision, and the response by appellant to the request for admissions that she received a $300,000 settlement from the accident.
 {¶ 9} When a court interprets an automobile insurance contract, the statutory law in effect at the time of entering into the contract controls the rights and duties of the contracting parties. Ross v.Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 287. Hence, we must interpret the contract in light of the statutes as they existed on September 20, 1998.
 {¶ 10} At the time the insurance contract was in effect, R.C.3937.18(A)(1) stated:
 {¶ 11} "Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 12} "For purposes of division (A)(1) of this section, a person is legally entitled to recover damages if he is able to prove the elements of his claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. ***"
 {¶ 13} The Supreme Court of Ohio has stated that uninsured motorist coverage applies only in situations where there is a complete lack of liability insurance, thus, if the tortfeasor motorist has liability insurance, there is no uninsured motorist insurance issue, and the injured party is not "legally entitled to recover" damages. Noblesv. Wolf (1990), 54 Ohio St.3d 75, 79-80. The purpose of uninsured motorist coverage is to place the insured in the same position as if the tortfeasor were insured, not a better one. Bowman v. Progressive Cas.Ins. Co. (1999), 136 Ohio App.3d 259, 265. Furthermore, another purpose of uninsured motorist coverage is to protect persons from losses that could go uncompensated because of the tortfeasor's lack of liability coverage. Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27,31.
 {¶ 14} In the case sub judice, if appellant were to receive uninsured motorist coverage of $100,000 in addition to the $300,000 already received, she would not be in the same position as if the tortfeasor were insured, she would be in a better position.
 {¶ 15} Furthermore, at the time the insurance contract was executed, R.C. 3937.18(A)(2) provided:
 {¶ 16} "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shallbe reduced by those amounts available for payment under all applicablebodily injury liability bonds and insurance policies covering personsliable to the insured." (Emphasis added.)
 {¶ 17} In interpreting this section of the statute, the Supreme Court of Ohio in Clark v. Scarpelli (2001), 91 Ohio St.3d 271, syllabus, held that, "[f]or the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Thus, the court must look at the amounts actually recovered from the other insurance, rather than comparing policy limits, as the trial court did. Id. at 276.
 {¶ 18} In addition, subrogation clauses are consistent with public policy and do not violate the intent of R.C. 3937.18. See Blue Cross Blue Shield Mut. of Ohio v. Hrenko (1995), 72 Ohio St.3d 120, 123. In fact, subrogation is included in R.C. 3937.18(E), which was in effect at the time this insurance contract was executed, and states:
 {¶ 19} "In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made[.]"
 {¶ 20} Moreover, "[a] setoff against the limits of underinsured and uninsured motorist coverage is permitted under R.C. 3937.18(E) provided the setoff is clearly set forth in the provisions of the insurance policy." In re Nationwide Ins. Co. (1989), 45 Ohio St.3d 11, syllabus. Accordingly, in the matter at hand, the $100,000 per person policy limit is offset by the $300,000 that was paid to appellant. Since appellant purchased $100,000 as the maximum available and did not purchase an umbrella policy, she cannot receive excess coverage.
 {¶ 21} Further, at the time the policy was executed, R.C.3937.18(H) also stated that:
 {¶ 22} "Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
 {¶ 23} An examination of the language of the State Farm policy at issue in the present case reveals that it contains language consistent with R.C. 3937.18(H). The policy includes language that limits appellee's liability to the per person policy limits. The policy determines that the amount of coverage listed under the "Each Person" limit is "the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person." (Emphasis sic.) R.C. 3937.18(H) provides that "[a]ny such policy limit shall be enforceable regardless of the number of insureds *** or vehicles involved in the accident." Since James was the only person who suffered "bodily injury" in the accident, this provision limits appellant's total recovery for the accident to the $100,000 per person limit. See Clark, supra.
 {¶ 24} In addition, the State Farm policy provides anti-stacking language consistent with R.C. 3937.18(F). The policy provides the following language:
 {¶ 25} "If the insured sustains bodily injury while occupying a vehicle not owned by you and such vehicle is described on the declarations page of another policy providing similar coverage, or its driver is an insured on another policy, this coverage applies:
 {¶ 26} "(1) as excess to any similar coverage which applies to the vehicle or its driver as primary coverage; but
 {¶ 27} "(2) only in the amount by which it exceeds the primary coverage." (Emphasis sic.)
 {¶ 28} Therefore, pursuant to the foregoing provision, appellee's policy with appellant limits her recovery for uninsured motorist benefits to the amount by which the limit of liability exceeds the tortfeasor's policy.
 {¶ 29} Finally, the State Farm policy contains reduction language that reduces the amount payable by the amounts paid by parties who are legally liable. This provision states:
 {¶ 30} "[T]he most we pay for all damages arising out of and due to bodily injury to one person is *** the difference between the `each person' limits of liability of this coverage, and the amount paid for thatbodily injury by or for any person or organization who is or may be held legally liable for the bodily injury ***." (Emphasis sic.)
 {¶ 31} Thus, according to that provision, the $100,000 per person policy limit is offset by the $300,000 paid to appellant.
 {¶ 32} After considering the policy language, including the limits of liability, anti-stacking and reduction language, it is our view that appellee's policy with appellant limits her to the $100,000 per person limit and that amount is offset by the $300,000 paid to appellant on behalf of the other tortfeasor. Accordingly, appellee has satisfied its liability under the uninsured/underinsured motorist provision of its policy. The language in the policy with appellee consolidates all claims resulting from the death of a single person into a single claim. Clark, supra, at 282. Therefore, the survivorship claim of the estate and all wrongful death claims are restricted to the single-person limit of $100,000 as set forth in the policy. See Phelps v. Middleton (Apr. 30, 2002), 11th Dist. No. 99-A-0046, 2002 WL 819066, at 3.
 {¶ 33} In the case at hand, appellant received a settlement of $300,000, and this amount is greater than the amount of underinsured motorist coverage. Thus, the amount of the settlement paid to appellant, $300,000, must be offset with the amount available from appellee, $100,000. Hence, appellants are not entitled to underinsured motorist coverage. We conclude that there is no merit to appellant's argument that the limits of liability should apply separately to each tortfeasor. Because appellant is, as a matter of law, not entitled to any underinsured motorist coverage, the trial court did not err by granting summary judgment in favor of appellee.
 {¶ 34} For the foregoing reasons, appellant's lone assignment of error is without merit. The judgment of the Portage County Court of Common Pleas is affirmed.
ROBERT A. NADER and DIANE V. GRENDELL, JJ., concur.
[1] We note that appellant initially filed a notice of appeal on February 7, 2001. However, after realizing that there was no final appealable order, appellant filed a notice of dismissal without prejudice on March 5, 2001. Thereafter, on September 24, 2001, appellant voluntarily dismissed her complaint against Paul and Matt. Subsequently, she filed this appeal against appellee on October 11, 2001.