DECISION.
{¶ 1} Plaintiffs-appellants Margaret Tenhundfeld and Jennifer Harmon appeal the judgment entered by the trial court in favor of State Farm Mutual Automobile Insurance Company ("State Farm") and Victoria National Insurance Company ("Victoria"). We affirm the trial court's judgment with respect to State Farm, but we reverse the judgment with respect to Victoria.
 {¶ 2} On June 15, 1997, Michael Tenhundfeld, the son of Margaret Tenhundfeld, was killed in a car accident. Michael's car was hit by a car driven by Cincinnati police officer Gregory Berting, who was pursuing Paul Lovelace. Margaret Tenhundfeld filed a lawsuit on behalf of herself and Michael's estate, seeking, among other things, coverage under two insurance policies issued by State Farm. Jennifer Harmon, the mother of Michael's minor child, joined the lawsuit and filed a claim on behalf of the child, seeking underinsured-motorist coverage under her policy with Victoria.
 The State Farm Policies {¶ 3} State Farm had issued two automobile insurance policies to Margaret Tenhundfeld. Policy number C04 3263-A30-35 ("Policy 1") listed Margaret Tenhundfeld as the named insured and listed a Honda Prelude as the described vehicle. The second policy, numbered 350 8916-E25-35L ("Policy 2"), also listed Margaret Tenhundfeld as the named insured. An Acura Integra was the described vehicle. Michael principally drove the Honda and was driving it when the accident occurred.
 {¶ 4} State Farm paid $250,000 to Tenhundfeld under Policy 1. But it denied coverage under Policy 2, contending that it had fully satisfied its obligations. State Farm and Tenhundfeld filed motions for summary judgment. The trial court granted summary judgment in favor of State Farm and denied Tenhundfeld's motion for summary judgment.
 The Victoria Policy {¶ 5} Harmon and Victoria settled Harmon's claim for $100,000, which was the full amount of the coverage under the policy. The issue of prejudgment and postjudgment interest was left open for consideration by the trial court. Upon Harmon's motion for prejudgment and postjudgment interest, the trial court held a hearing. At the conclusion of the hearing, the trial court concluded that prejudgment interest began to accrue on February 25, 2002, which was the day that Harmon filed the lawsuit against Victoria. The court also concluded that postjudgment interest began to accrue on September 23, 2003, which was the date of the settlement of the lawsuit against Victoria.
 First Assignment of Error {¶ 6} In the first assignment of error, Tenhundfeld now asserts that the trial court erred in granting summary judgment to State Farm.
 {¶ 7} Summary judgment may only be granted when, after construing the evidence most strongly in favor of the nonmoving party, "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *."[1]
This court reviews the granting of summary judgment de novo.[2]
 {¶ 8} Former R.C. 3937.18(G), which was the law in effect when the policies were issued, permitted automobile-insurance providers to include anti-stacking language in policies that contained uninsured- and underinsured-motorist coverage. Intrafamily stacking is defined in R.C.3937.18(G)(2) as "the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household."
 {¶ 9} Both State Farm policies contained the following anti-stacking language: "If There Is Other Uninsured Motor Vehicle Coverage 1. Any and all stacking of uninsured motor vehicle coverage is precluded. 2. If Other Policies Issued By Us To You, Your Spouse or Any Relative Apply * * * Subject to 1 above, if two or more motor vehicle liability policies issued by us to you, your spouse or any relative providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."
 {¶ 10} State Farm paid $250,000, which was the limit of Policy 1. Tenhundfeld does not dispute the validity of the anti-stacking language in the policies. Rather, she contends that Policy 1 was really Michael's policy, and that under the Ohio Supreme Court's decision in Wallace v.Balint,[3] the estate of Michael Tenhundfeld and Margaret should be able to recover separately under their individual policies.
 {¶ 11} The named insured for both policies was Margaret Tenhundfeld. But Tenhundfeld urges us to conclude that there is a question of fact about whether Policy 1 was really Michael's. She claims that the only reason that Michael was not the named insured was that Michael was a minor when the policies were issued, and that State Farm directed her to leave Michael off the policy as a named insured.
 {¶ 12} "It is well established that when the language in an insurance policy is clear and unambiguous, [the court] must enforce the contract as written and give the words their plain and ordinary meaning."[4] Here, both policies clearly stated that the named insured was Margaret Tenhundfeld. As there was no ambiguity in the language, there is no need for us to look to extrinsic evidence to determine the meaning of the language in the policy. By the clear language of the policies, Tenhundfeld was precluded from stacking the coverage of the policies.
 {¶ 13} Tenhundfeld's second contention is that, rather than being subject to the $250,000-per-person limit, she should be entitled to recover up to the per-accident limit ($500,000) because the accident was caused by multiple uninsured motorists.
 {¶ 14} That Paul Lovelace was an uninsured motorist is undisputed. Tenhundfeld argues that if the city of Cincinnati were to prevail on its contention that Officer Berting and the city are immune from liability,[5] Berting and the city would be uninsured under the terms of State Farm's policy. We need not determine whether Cincinnati and Berting were uninsured motorists under the terms of the policies because the language of the policies is dispositive.
 {¶ 15} Both policies contained the following language about the limits of liability: "Under `Each Person' is the amount of coverage for all damages arising out of and due to bodily injury to one Person. `Bodily injury to one person' includes all injury and damages to others arising out of and resulting from this bodily injury. Under `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person' for all such damages arising out of and due tobodily injury to two or more persons in the same accident."
 {¶ 16} Tenhundfeld argues that, under the Ohio Supreme Court's decision in Motorists Mutual Ins. Co. v. Tomanski,[6] she was entitled to recover up to the per-person limit for each tortfeasor, subject to the per-accident limit. In Tomanski, the supreme court held that an insured's right of recovery under uninsured-motorist insurance is not eliminated by the presence of an insured motor vehicle in the same accident.[7] InRoberts v. Allstate Ins. Co.,[8] the Twelfth Appellate District considered whether, under Tomanski, an insured who was injured by the negligence of joint tortfeasors had separate claims for uninsured-motorist coverage as to each tortfeasor. We agree with the court's conclusion that Tomanski is not dispositive of the issue. As stated by the Twelfth Appellate District, Tomanski "stands for the proposition that the presence of one insured and one uninsured motorist, when both are negligent, will not defeat a plaintiff's contractual right to seek benefits for the negligence of the uninsured motorist."[9]
Resolution of the issue requires an examination of the policy language "to determine what contractual right appellants have to recover uninsured motorist benefits under the policy provisions."[10]
 {¶ 17} Here, the language in the State Farm policies was clear that coverage was limited by the injury suffered, as opposed to the persons who had caused the injury. The $250,000-per-person limit covered the damages to one person. The $500,000-per-accident limit applied only to those damages sustained by two or more people in the same accident. Based on the clear language of the policies, Tenhundfeld was limited to the per-person amount. The first assignment of error is overruled.
 Second Assignment of Error {¶ 18} In the second assignment of error, Harmon asserts that the trial court erred in concluding that prejudgment interest began to accrue on the day that the lawsuit was filed.
 {¶ 19} Harmon argues that, under this court's decision in Bowman v.Progressive Cas. Ins. Co.,[11] the trial court was required to conclude that prejudgment interest began to accrue on the day of the accident. InBowman, we held that "[t]wo general rules apply to the awarding of prejudgment interest on an uninsured-motorist claim where no bad faith is alleged: (1) when the amount of coverage is less than the insured's damages, prejudgment interest under R.C. 1343.03(A) should ordinarily be assessed from the date of the accident; and (2) when the amount of coverage is greater than the damages, interest should ordinarily be assessed from the date coverage is determined by an arbitrator, at a trial, or in a settlement."[12] Victoria counters that, under the Ohio Supreme Court's decision in Landis v. Grange Mutual Ins. Co.,[13] the trial court had discretion to determine the accrual date, and that application of Bowman's general rules would have removed that discretion from the trial court.
 {¶ 20} In Landis, the supreme court concluded that because an uninsured-motorist claim is a contract claim, the benefits under an uninsured-motorist policy are due and payable based on the insurance policy.[14] The purpose of prejudgment interest is to fully compensate the insured.[15] The court went on to state that the date when prejudgment interest accrues should be determined by the trial court.[16]
In Bowman, we sought to give guidance to counsel for insurers and insureds as they attempt to resolve the issue of prejudgment interest. We recognized that creating an all-encompassing rule was difficult and that our guidelines "might be subject to exceptions and limitations."[17]
Rather than eliminating the trial court's discretion, the guidelines stated in Bowman acknowledge the contractual nature of an uninsured-motorist claim and guide the court in making the determination.
 {¶ 21} With these guidelines in mind, we turn to the trial court's determination in this case. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[18] Here the trial court found that the actual damages suffered by Michael Tenhundfeld's child exceeded the policy limits. The trial court concluded that the date for the accrual of prejudgment interest was the date of the initiation of the lawsuit. This determination ignored the contractual nature of Harmon's claim. The trial court cited no reason to deviate from our guideline that where the coverage is less than the damages suffered, prejudgment interest ordinarily should be awarded from the date of the accident in order to make the insured whole. We conclude that the deviation from the guideline was unreasonable and was an abuse of the trial court's discretion. The second assignment of error is sustained.
 {¶ 22} Accordingly, we affirm the judgment of the trial court with respect to State Farm and reverse the judgment with respect to Victoria. This case is remanded for further proceedings in accordance with law so that the trial court may properly assess prejudgment interest.
Judgment affirmed in part and reversed in part, and cause remanded.
Gorman, P.J., and Painter, J., concur.
[1] Civ.R. 56(C).
[2] Jorg v. Cincinnati Black United Front, 153 Ohio App.3d 258,2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled, 100 Ohio St.3d 1471, 2003-Ohio-5772, 798 N.E.2d 406.
[3] 94 Ohio St.3d 182, 2002-Ohio-480, 761 N.E.2d 598.
[4] Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 607,1999-Ohio-322, 710 N.E.2d 677.
[5] The city had filed a motion for summary judgment, asserting sovereign immunity. The trial court denied the motion, concluding that there were issues of fact in dispute. The trial court's denial of the city's motion is not at issue in this appeal.
[6] (1971), 27 Ohio St.2d 222, 271 N.E.2d 924.
[7] Id. at syllabus.
[8] 12th Dist. No. CA2001-06-133, 2001-Ohio-8637.
[9] Id.
[10] Id.
[11] (1999), 136 Ohio App.3d 259, 736 N.E.2d 502.
[12] Id. at syllabus.
[13] (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140.
[14] Id. at 341.
[15] Id.
[16] Id. at 342.
[17] Bowman, supra, at 264.
[18] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.